IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PHARMARON, INC.,                           )
                                           )
                    Plaintiff,             )
                                           )
        v.                                 )    C.A. No. 25-403-MN
                                           )
SONATA THERAPEUTICS, INC.,                 )
                                           )
                    Defendant.             )

**REPORT AND RECOMMENDATION**

Presently before the Court is the motion of Plaintiff Pharmaron, Inc. ("Plaintiff" or "Pharmaron") for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b).[1] (D.I. 10). For the reasons set forth below, the Court recommends that Plaintiff's motion be GRANTED.

## I. BACKGROUND

On December 15, 2023, Pharmaron and Defendant Sonata Therapeutics, Inc. ("Defendant" or "Sonata") entered into a Master Services Agreement ("MSA"), whereby Pharmaron agreed to provide "professional laboratory and research services" for Sonata. (D.I. 1 ¶ 12; D.I. 1, Ex. A (MSA)). Pharmaron apparently fully performed the agreed-upon services, but Sonata failed to pay. (D.I. 1 ¶ 13). Relying on Sonata's representation that it "intend[ed] to make a good faith payment" of $400,000 toward the outstanding balance due under the MSA, Pharmaron entered

---

[1]    Because Pharmaron requests not only the express amount identified in the Settlement Agreement (D.I. 1, Ex. C at Recitals § D), but also "reasonable attorneys' fees" pursuant to the Settlement Agreement (*id.* ¶ 8), the Court treats Pharmaron's motion as one under Rule 55(b)(2). *See Nat'l Salvage & Serv. Corp. v. Sula Valley Biogas, SA de C.V.*, C.A. No. 22-1428-TMH, 2023 WL 4744769, at *1 (D. Del. July 25, 2023) (request for reasonable attorneys' fees pursuant to contract not "sum certain"); 10A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2683 (4th ed. Sept. 2025) ("[T]he need to fix 'reasonable' attorney's fees prevents the clerk from entering a judgment under Rule 55(b)(1).").

into a Confidential Settlement and Release Agreement ("Settlement Agreement") with Sonata on June 12, 2024.  (D.I. 1, Ex. C).

Pursuant to the Settlement Agreement, Pharmaron agreed to forbear litigation on the amount due under the MSA to allow Sonata "a period of time" to make full payment.  (D.I. 1 ¶ 18 (quoting D.I. 1, Ex. C at Recitals § F)).  The Settlement Agreement required Sonata to make an initial payment of $400,000 on or before June 15, 2024, with monthly payments to follow in July, August, September and October of 2024 until the full Outstanding Receivable ($1,450,151.19) was fully paid by October 20, 2024.  (*See* D.I. 1, Ex. C at Recitals § E & ¶ 1(b)-(d)).  In the event that Sonata failed to make a payment under the schedule in Paragraph 1, the Settlement Agreement provides that "the remaining outstanding balance shall be immediately due and payable."  (D.I. 1 ¶ 19 (quoting D.I. 1, Ex. C at § 3)).  The Settlement Agreement further provides:

> Except as expressly set forth herein, each Party hereto shall bear its own attorneys' fees and costs arising from the actions of its own counsel in connection with this Settlement Agreement that were incurred prior to the date of execution of this Settlement Agreement; *provided, however*, that nothing within this Settlement Agreement shall prohibit or limit Pharmaron's rights to seek attorneys' fees and costs in the event that Sonata fails to make any of the payments provided for under this Settlement Agreement on or before the time periods set forth in Paragraph 1 above. In any action of any kind relating to this Settlement Agreement, the prevailing Party shall be entitled to collect reasonable attorneys' fees and costs from the non-prevailing Party in addition to any other recovery to which the prevailing Party is entitled.

(D.I. 1, Ex. C ¶ 8 (emphasis in original)).

Sonata did not make any payments under the Settlement Agreement, including the $400,000 initial payment due on June 15, 2024.  (D.I. 1 ¶ 27; D.I. 16 ¶ 10).  On December 23, 2024, Pharmaron sent Sonata a demand letter for payment.  (D.I. 1 ¶ 14; D.I. 1, Ex. B (Demand Letter)).  On April 1, 2025, Pharmaron filed the present against Sonata, asserting one count for

breach of the Settlement Agreement and seeking the balance of the amount due. (D.I. 1 ¶¶ 23-29). Service was effectuated on Sonata on April 9, 2025, and the deadline to answer was April 30, 2025. (D.I. 5 ¶¶ 2-3; *see also id.*, Ex. A). After Sonata failed to respond to the Complaint or otherwise appear, the Clerk of Court entered default against Sonata on September 18, 2025. (D.I. 8). On December 29, 2025, Pharmaron filed the present motion for default judgment, supported by attorney affidavit. (D.I. 10). On June 23, 2026, the Court held a hearing on Plaintiff's motion for default judgment, and Plaintiff thereafter submitted supplemental declarations and a proposed final judgment. (D.I. 15; D.I. 16; D.I. 17). To date, Sonata has not responded to the Complaint or otherwise appeared in this action.

## II.   LEGAL STANDARD

Entry of default judgment is a two-step process. *Tristrata Tech., Inc. v. Med. Skin Therapy Research, Inc.*, 270 F.R.D. 161, 164 (D. Del. 2010). First, the party seeking a default judgment must request that the Clerk of Court enter default against the party that has failed to answer the pleading or otherwise defend itself in the action. FED. R. CIV. P. 55(a); *see also J & J Sports Prod., Inc. v. Kim*, C.A. No. 14-1170-LPS, 2016 WL 1238223, at *1 (D. Del. Mar. 29, 2016). After default has been entered, a plaintiff may obtain a default judgment. FED. R. CIV. P. 55(b); *see also J & J Sports*, 2016 WL 1238223, at *1. If seeking relief in the form of a sum certain, the plaintiff may obtain a default judgment from the Clerk of Court. FED. R. CIV. P. 55(b)(1); *see also J & J Sports*, 2016 WL 1238223, at *1. Otherwise, "the party seeking default judgment must apply to the court for an entry of default judgment." *Tristrata Tech.*, 270 F.R.D. at 164.

Courts have discretion over whether to enter a default judgment in a particular case. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). The court considers three factors when determining if default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied,

(2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). When default judgment is entered, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (cleaned up). As to damages, however, a court must calculate the appropriate amount of damages if not for a sum certain; the court cannot merely accept plaintiff's representations. *See PPG Indus. Inc v. Jiangsu Tie Mao Glass Co.*, 47 F.4th 156, 161 (3d Cir. 2022); *Palmer v. Slaughter*, C.A. No. 99-899-GMS, 2000 WL 1010261, at *2 (D. Del. July 13, 2000).

III.    **DISCUSSION**

A.    **Liability**

Plaintiff has established that entry of default judgment is warranted. All three factors weigh in favor of granting Plaintiff's motion for default judgment. *See Chamberlain*, 210 F.3d at 164.

As to the first factor, taking the allegations in the Complaint as true, Pharmaron "will undoubtedly suffer prejudice if this motion is denied because it would otherwise be unable to recover damages for [Sonata's] breaches." *DoiT Int'l, LTD v. BlackSwan Techs., Inc.*, C.A. No. 23-560-MN, 2023 WL 6211722, at *2 (D. Del. Sept. 25, 2023), *report and recommendation adopted*, 2023 WL 7408034 (D. Del. Nov. 9, 2023); *see also Adru Tech Ltd. v. DS Games, Inc.*, C.A. No. 24-901-MN, 2025 WL 315353, at *3 (D. Del. Jan. 28, 2025). The first factor thus weighs in favor of granting Plaintiff's motion for default judgment.

As to the second factor, Sonata does not appear to have a litigable defense given that Sonata failed to answer or rebut any claims in the Complaint. *See J & J Sports Prod., Inc. v. M&I Hosp. of Delaware Inc.*, C.A. No. 15-353-MN, 2018 WL 6040254, at *2 (D. Del. Nov. 19, 2018) ("It is

not apparent that M&I has a litigable defense given its failure to respond to the action."). The second factor also weighs in favor granting Plaintiff's motion for default judgment.

With respect to the last factor, because Sonata was properly served and refused to respond, the Court can infer that Sonata's delay was due to culpable conduct. *See Skeway v. China Nat. Gas, Inc.*, C.A. No. 10-728-RGA, 2015 WL 451435, at *1 (D. Del. Jan. 30, 2015); *see also Satira Shipping Co. Ltd. v. Glob. Am. Transp. LLC*, C.A. No. 24-1202-MN, 2025 WL 2378988, at *3 (D. Del. Aug. 15, 2025). Therefore, the third and final factor also weighs in favor of granting Plaintiff's motion for default judgment.

### B.    Damages

Having found that entry of default judgment is appropriate, the Court now turns to damages. Pharmaron seeks entry of an award totaling $1,450,151.19 plus pre-judgment interest, post-judgment interest and attorneys' fees and costs.[2] (*See* D.I. 16 ¶ 12). Having considered the applicable law, Pharmaron's submissions and the evidence presented, the Court finds that the requested relief, as further outlined below, is appropriate.

First, the Court recommends that Pharmaron be awarded the full Outstanding Receivable recited in the Settlement Agreement. (D.I. 1, Ex. C at Recitals § D & Appendix I). The Settlement Agreement requires Sonata to pay the full "Outstanding Receivable" – defined as $1,450,151.19.

---

[2]    In its Complaint, demand letter and motion for default judgment, Pharmaron sought $1,481,833.59 in damages for breach of the Settlement Agreement – a different figure than the amount set forth in the Settlement Agreement ($1,450,151.19). (*Compare* D.I. 1, Ex. C at Recitals § D & Appendix I, *with* D.I. 1 ¶ 1, 14, 27 & 29, *and* D.I. 1, Ex. B at 2-3, *and* D.I. 1, Ex. D, *and* D.I. 10 ¶¶ 11-12). After being pressed on the discrepancy at the June 2026 hearing, Pharmaron submitted a supplemental declaration from Clarissa Barrow, senior manager of accounts receivable, indicating that "Exhibit D to Pharmaron's Complaint and the amount of damages ($1,481,833.59) listed in the Complaint were provided in error." (D.I. 16 ¶ 11). Ms. Barrow clarified that Pharmaron seeks $1,450,151.19 in damages – *i.e.*, the full Outstanding Receivable provided in the Settlement Agreement. (*Id*. ¶ 12; D.I. 1, Ex. C at Recitals § D).

(D.I. 1, Ex. C at Recitals § D; *see also id.* at Appendix I (listing outstanding receivables based on invoice)).  Paragraph 1 of the Settlement Agreement provides a payment plan starting on June 15, 2024 and ending on October 20, 2024, under which Sonata was to pay the full Outstanding Receivable in five installments.  (*Id.* ¶ 1(b)-(d)).  According to Pharmaron's senior account manager, Sonata has made "no payments" pursuant to the Settlement Agreement or otherwise in connection with its outstanding debt to Pharmaron.  (D.I. 16 ¶ 10).  As such, the Court finds that Pharmaron is entitled to $1,450,151.19 in damages under the Settlement Agreement because that is the full Outstanding Receivable still due.

Second, the Court recommends that pre-judgment interest be awarded using a simple fixed rate.  Because the Settlement Agreement is silent as to the interest rate to be applied, "the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due."  6 *Del. C.* § 2301(a).[3]  After Sonata failed to remit initial payment on June 15, 2024, "the remaining outstanding balance" became "immediately due and payable."  (D.I. 1, Ex. C ¶ 3).  Accordingly, pre-judgment interest for the entire balance should be calculated from that date.  *See Citadel Holding Corp. v. Roven*, 603 A.2d 818, 826 (Del. 1992) ("[Pre-judgment] interest is to be computed from the date payment is due.").  And because the Federal Reserve discount rate was 5.5% on June 15, 2024,[4] a rate of 10.5% is appropriate.  *See Corso v. Concordia Healthcare USA, Inc.*, C.A. No. 21-353-SB, 2023 WL 2930255, at *2 (D. Del. Apr. 13, 2023); *Balooshi v. GVP Glob. Corp.*, No. CV N19C-10-215 CEB, 2022 WL 576819, at *14 (Del. Super. Ct. Feb. 25, 2022), *aff'd*, 285 A.3d 839 (Del. 2022).  Finally, a simple and fixed

---

[3]    "The court's decision to award prejudgment interest in an action based on diversity is a matter of state law."  *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 162 (3d Cir. 2011).  The Settlement Agreement specifies that Delaware law applies.  (D.I. 1, Ex. C ¶ 9(A)).

[4]    Rate obtained from https://www.federalreserve.gov/datadownload/Choose.aspx?rel=H15.  *See also* https://fred.stlouisfed.org/series/DPCREDIT.

rate is appropriate, which Pharmaron does not dispute (D.I. 15 ¶ 14). *See CIGNEX Datamatics, Inc. v. Lam Rsch. Corp.*, C.A. No. 17-320 (MN), 2021 WL 212692, at *2 (D. Del. Jan. 21, 2021). Therefore, the Court recommends that pre-judgment interest be awarded on the $1,450,151.19 amount at a rate of 10.5% from June 15, 2024 until the date that judgment is entered.[5]

Third, the Court recommends that Pharmaron be awarded $17,087.24 in attorneys' fees and costs. As the "prevailing Party" in an "action of any kind relating to [the] Settlement Agreement," Pharmaron is entitled to collect its reasonable attorneys' fees and costs incurred during this litigation. (*See* D.I. 1, Ex. C ¶ 8). After the June 2026 hearing, Pharmaron's counsel submitted documentation evidencing $21,190.50 in attorneys' fees and $434.24 in costs ($21,624.74 total) incurred between March 2024 and June 2026. (*See* D.I. 15 ¶¶ 3-10; D.I. 15, Ex. A). Pharmaron's requested fees and costs can be categorized as: (1) pre-litigation fees incurred between March 2024 and October 2024, amounting to $4,537.50 in fees and (2) litigation fees and costs incurred between December 2024 and June 2026, amounting to $16,653.00 in fees and $434.24 in costs ($17,087.24 total).[6] (*See* D.I. 15, Ex. A at 4-79). Pharmaron fails to explain – let alone, demonstrate – why the requested pre-litigation fees fall within the scope of Paragraph 8 of the Settlement Agreement, which awards attorneys' fees and costs incurred in the context of

---

[5] Pharmaron incorrectly suggests that pre-judgment interest should be calculated using the Federal Reserve discount rate as of the date Pharmaron submitted its declarations (June 25, 2026), as opposed the date when the Outstanding Receivable became due and payable (June 15, 2024). (D.I. 15 ¶ 13; D.I. 16 ¶ 14).

[6] The pre-litigation fees and costs largely relate to the negotiation and drafting of the Settlement Agreement. (*See* D.I. 15, Ex. A at 3-11; *see also* D.I. 1, Ex. C ¶ 11 ("Except as expressly set forth herein, each Party hereto shall bear its own attorneys' fees and costs arising from the actions of its own counsel in connection with this Settlement Agreement that were incurred prior to the date of execution of this Settlement Agreement . . . .")). To contrast, the litigation fees and costs largely relate to the post-Settlement Agreement demand letter, Complaint, application for entry of default and instant motion for default judgment. (*See* D.I. 15, Ex. A at 25-62).

litigation and after breach of the agreement. (*See* D.I. 1, Ex. C ¶ 8 (awarding reasonable attorneys' fees and costs incurred in an "action" and "in the event that Sonata fails to make any of the payments provided for under this Settlement Agreement")). The Court recommends that Pharmaron bear its own pre-litigation costs and fees. But with respect to the litigation activity, the Court finds that the requested attorneys' fees and costs are reasonable and within the scope of the agreement. Therefore, the Court recommends that Pharmaron be awarded $16,653.00 in fees and $434.24 in costs ($17,087.24 total).

Finally, post-judgment interest is mandatory for damages awarded in civil cases in federal district court. *See* 28 U.S.C. § 1961(a); *see also Pierce Assocs., Inc. v. Nemours Found.*, 865 F.2d 530, 548 (3d Cir. 1988) (post-judgment interest governed by federal law in diversity actions). Pharmaron is entitled to post-judgment interest pursuant to the federal statutory rate from the date that judgment is entered until satisfied. Such interest accrues on the entire amount included in the judgment – *i.e.*, the Outstanding Receivable ($1,450,151.19), attorneys' fees and costs ($17,087.24) and pre-judgment interest (to be calculated upon entry of judgment, as detailed above). *See Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 174 (3d Cir. 2010); *Eaves v. Cnty. of Cape May*, 239 F.3d 527, 530 (3d Cir. 2001).

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends that Pharmaron's motion for default judgment be GRANTED.

The Court further recommends that judgment be entered in favor of Pharmaron and against Sonata in the amount of: (1) $1,450,151.19 plus pre-judgment interest at a simple and fixed rate of 10.5% from June 15, 2024 until the date that judgment is entered; (2) $17,087.24 in attorneys' fees and costs and (3) post-judgment interest pursuant to 28 U.S.C. § 1961 from the date judgment

is entered until the judgment is satisfied. Pharmaron is directed to serve a copy of this Report and Recommendation on Sonata and shall file proof of such service with the Court.

The parties may file objections to this Report and Recommendation within fourteen (14) days after being served with a copy of the Report and Recommendation. *See* FED. R. CIV. P. 72(b)(2); *see also* FED. R. CIV. P. 6(d). Any responses to the objections shall be filed fourteen (14) days after the objections. Objections and responses are limited to ten (10) pages. The failure of a party to object may result in the loss of the right to review in the district court and the loss of certain appellate rights. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1. The parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: July 17, 2026

_____
UNITED STATES MAGISTRATE JUDGE

9